## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

| | | |
|---|---|---|
| **JEFF MURPHREE,** | ] | |
| | ] | |
| **Plaintiff,** | ] | |
| | ] | |
| **v.** | ] | |
| | ] | **4:11-CV-2563-KOB** |
| **AMERICAN FEDERATION OF** | ] | |
| **GOVERNMENT EMPLOYEES, AFL-** | ] | |
| **CIO; AFGE COUNCIL 220; AFGE** | ] | |
| **LOCAL 3438,** | ] | |
| | ] | |
| **Defendants.** | ] | |

### MEMORANDUM OPINION

The mere invocation of a federal statute does not automatically provide a hook to drag a plaintiff into federal court, even if the plaintiff's allegations are somehow connected to that statute. Thus, as this court considers Plaintiff's Motion to Remand (doc. 4), it does not question the degree to which the conduct alleged by the plaintiff overlaps with the Civil Service Reform Act, Pub. L. No. 95-454, 91 Stat. 1111 (1978) (codified in scattered sections of 5 U.S.C.A.), a federal statute enacted to resolve personnel disputes among federal employees. Instead, the court decides whether the CSRA provides a *remedy* for the conduct the plaintiff alleges in his well-pled complaint.

Plaintiff Jeff Murphree initiated this lawsuit in state court against defendants American Federation of Government Employees ("AFGE"), AFLC-CIO; AFGE Council 220; and AFGE Local 3438 (collectively referred to as "the union defendants"). Mr. Murphree alleges state law claims for defamation, invasion of privacy, and intentional infliction of emotional distress

relating to an article published in a union newsletter, "UNITY," entitled "No Relief from Alleged Harassment." The UNITY article discussed a female federal employee's harassment claims against Mr. Murphree; referred to Mr. Murphree by name; and detailed some of the allegations against Mr. Murphree, including some of the lascivious statements he allegedly made to the female employee. The article also quoted a union official who stated that Mr. Murphree, among others, should never be allowed to supervise bargaining unit employees in the future.

After Mr. Murphree filed his complaint, the union defendants removed the case to this court, arguing that the matter about which Mr. Murphree filed suit is governed by the Civil Service Reform Act of 1978, Pub. L. No. 95-454, 91 Stat. 1111 (1978) (codified in scattered sections of 5 U.S.C.A.), and that Mr. Murphree's state law claims are, thus, preempted by CSRA. Mr. Murphree filed a motion to remand, contending that his state law claims do not fall within the scope of the CSRA; that his state tort claims are, thus, not preempted; and that removal, therefore, is improper.

The court has reviewed the parties' briefs, the relevant portions of the CSRA, and the applicable case law. For the reasons stated below, the court determines that the CSRA does not cover, and, therefore, does not preempt, Mr. Murphree's claims. Accordingly, Mr. Murphree's motion to remand is due to be granted.

**DISCUSSION**

The union defendants contend that Mr. Murphree's claims are covered by two different parts of the CSRA. First, the union defendants argue that Title VII of the CSRA, 5 U.S.C. § 7101 *et seq.*, requires Mr. Murphree to use the collective bargaining agreement's negotiated grievance procedure. *See* 5 U.S.C. § 7121. The union defendants also argue that Mr. Murphree alleges

2

unfair labor practices in his complaint, and that Title VII requires him to file all complaints of

unfair labor practices with the appropriate administrative agency. *See* 5 U.S.C. § 7118. Second,

the union defendants argue, somewhat confusedly, that Mr. Murphree's filing of this lawsuit

constitutes a prohibited personnel practice under § 2302, and it is, therefore, preempted under the

CSRA.[1]

The union defendants misstate the purpose of the CSRA. The statute, although intended

to provide fair and efficient mechanisms for resolving employment disputes among civil

servants, does not cover all claims remotely related to a person's employment with the federal

government. The CSRA addresses a broad, but nevertheless finite, range of disputes, such as

adverse personnel actions (Title II of the CSRA) or unfair labor practices (Title VII of the

CSRA). Mr. Murphree's state law defamation claims arising out of the publication of the

newsletter, however, involve neither an adverse *personnel action* nor an unfair *labor* practice.

Although the underlying sexual harassment proceedings *may* have involved some adverse

personnel action, Mr. Murphree does not dispute the proceedings or allegedly defamatory

statements made within the course of those proceedings. His claims instead address conduct

made *outside* those proceedings.

Because the union defendants removed this case to federal court, they bear the burden of

establishing that federal jurisdiction exists, *see Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972

(11th Cir. 2002), and, therefore, must demonstrate to this court what statutory provisions bring

Mr. Murphree's claims within the scope of the CSRA and federal jurisdiction. The court

---

[1] As this court will explain below, the "prohibited personnel practice" that is covered by the CSRA would be the adverse personnel action allegedly taken by the *union defendants* against Mr. Murphree, and not the action Mr. Murphree took against another federal employee who is a third party to this suit.

concludes that the union defendants have not done so.

## A.     Overview of the CSRA

The CSRA "'comprehensively overhauled the civil service system' . . . creating an elaborate 'new framework for evaluating adverse personnel actions against [federal employees] . . . .'" *United States v. Fausto*, 484 U.S. 439, 443 (1988) (quoting *Lindahl v. OPM*, 470 U.S. 768, 773 (1985)). "A leading purpose of the CSRA was to replace the haphazard arrangements for administrative and judicial review of personnel action, part of the 'outdated patchwork of statutes and rules built up over almost a century' that was the civil service system." *Fausto*, 484 U.S. at 444. The Supreme Court in *Fausto*, after summarizing the perceived problems with the civil service system before the enactment of the CSRA, explained that "Congress responded to [these perceived problems] by enacting the CSRA, which replaced the patchwork system with an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *See Fausto*, 484 U.S. at 444–45.

In *Fausto*, the Court recognized "three main sections of the CSRA [that] govern personnel action taken against members of the civil service." *See Fausto*, 484 U.S. at 445. One section relevant to Mr. Murphree's claims, Chapter 23 of the CSRA, "establishes the principles of the merit system of employment, § 2301, and forbids an agency to engage in 'prohibited personnel practices,' including unlawful discrimination, coercion of political activity, nepotism, and reprisal against so-called whistleblowers." *See Fausto*, 484 U.S. at 446 (citing 5 U.S.C. § 2302). The CSRA not only forbids agencies from engaging in "prohibited personnel practices," but also provides an administrative procedure to address the commission of "prohibited

personnel practices." *See* 5 U.S.C. § 1204 (explaining the powers and functions of the Merit

Systems Protection Board ["MSPB"] and its role in adjudicating all matters within its jurisdiction

under the CSRA); 5 U.S.C. § 1214 (detailing the procedures the Office of Special Counsel takes

in investigating "prohibited personnel practices"); *see also Carducci v. Regan*, 714 F.2d 171, 174

(D.C. Cir. 1983) (stating that prohibited personnel practices have been "eliminated . . . from

direct judicial review.").

In addition to providing a means of evaluating personnel actions, the CSRA also sets

forth guidelines for employee-management relations in Title VII of the CSRA, which governs

labor organizations and collective bargaining among federal employees. *See* 5 U.S.C. § 7101 *et*

*seq*. The union defendants contend that Mr. Murphree's allegations are covered by both Title II

and Title VII of the CSRA, that the CSRA—a federal statute—preempts his claims, and that this

court, therefore, has subject matter jurisdiction.

**B.**     ***The CSRA and its relation to removal jurisdiction***

A well-worn refrain bears repeating once more: "A removing defendant bears the burden

of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th

Cir. 2002). "Any doubts about the propriety of federal jurisdiction should be resolved in favor of

remand to state court." *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1294 (11th Cir.

2008). In determining whether federal jurisdiction exists, courts are to apply the well-pleaded

complaint rule, which requires the court to "look to the face of the complaint rather than to

defenses, for the existence of a federal question." *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1178

(11th Cir. 2006) (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987)). While the

general rule prohibits removal based on a federal defense, "an exception exists in cases of

'complete preemption,' where Congress so 'completely pre-empt[s] a particular area that any civil complaint . . . is necessarily federal in character.'" *See Jones*, 457 F.3d at 1178 (alteration in original) (quoting *Metro Life Ins. Co. v. Taylor*, 481 U.S. 58, 63–64 (1987)). "Complete preemption occurs when a federal statute both preempts state substantive law and 'provides the exclusive cause of action for the claim asserted.'" *Dial v. Healthspring of Ala., Inc.,* 541 F.3d 1044, 1047 (11th Cir. 2008) (quoting *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). "[O]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Atwater v. NFL Players Ass'n*, 626 F.3d 1170, 1176 (11th Cir. 2010) (quoting *Caterpillar*, *Inc. v. Williams*, 482 U.S. 386, 393 (1987)).

The Eleventh Circuit has not yet addressed whether the CSRA *completely* preempts causes of action brought under state law so as to establish federal jurisdiction; instead, it has only discussed the CSRA's preemptive effect in the context of an ordinary preemption defense, and not in the context of a motion to remand. *See Broughton v. Courtney*, 861 F.2d 639, 644 (11th Cir. 1998) ("We emphasize that we do not decide whether the CSRA preempts all state common law actions for tortious interference with employment by federal employees. We merely decide that where, as here, an employee challenges personnel actions within the scope of the Act's coverage under state law, those challenges are preempted by the CSRA."). Although the Eleventh Circuit did not decide whether the CSRA completely preempts a federal employees' claims that fall within its scope, it nevertheless stated the CSRA's preemptive effect in strong terms, explaining that "Congress intended the CSRA to provide an exclusive procedure for *challenging personnel decisions*" that fall within its scope. *See Broughton*, 861 F.2d at 643 (emphasis added).

The Court explained that the adjudication of state law claims based on conduct that constituted prohibited personnel action "would create an obstacle to the attainment of Congress's goal of unifying challenges to federal personnel decisions in a single administrative forum." *See Broughton*, 861 F.2d at 641. Accordingly, the Eleventh Circuit held that when "an employee challenges personnel actions within the scope of the [CSRA]'s coverage under state law, those challenges are preempted by the CSRA." *Broughton*, 861 F.2d at 644.

In light of the Eleventh Circuit's conclusion that the CSRA is meant to provide the *exclusive* procedure for challenging federal personnel decisions, this court finds that the CSRA *completely* preempts any state law claim *that falls within its scope*. This holding is in line with substantial authority in other jurisdictions that has also held that the CSRA completely preempts claims within its coverage, and that such claims establish federal jurisdiction. *See*, *e.g.*, *Schwartz v. IFPTE*, 306 Fed. Appx. 168, 172 (5th Cir. 2009) ("Indeed, we have explicitly noted that '[e]very circuit facing this issue has concluded that the remedies provided by the CSRA preempt state-law remedies for adverse personnel actions.'") (quoting *Rollins v. Marsh*, 937 F.2d 134, 140 (5th Cir. 1991)).

Accordingly, *if* Mr. Murphree's well-plead complaint alleges conduct by the union defendants that falls within the scope of the CSRA, Mr. Murphree's state law claims are preempted, and the court has subject matter jurisdiction in this case. *See Schwartz*, 306 Fed. Appx. at 172. On the other hand, if Mr. Murphree's state law claims fall outside the CSRA, this court will lack federal question jurisdiction and must remand the case to state court. *See Gutierrez v. Flores*, 543 F.3d 248, 256 (5th Cir. 2008) ("Based upon the unique circumstances presented here and the particular cause of action at issue, we find that [the defendants] have not

7

met their burden of establishing that the CSRA completely preempts [the plaintiff]'s claim. Therefore, federal question jurisdiction is absent and the case should have been remanded to state court.").

*1.        Is Mr. Murphree required to use negotiated grievance procedures from the collective bargaining agreement?*

The union defendants attempt to pin their preemption argument on numerous provisions of Title VII of the CSRA; however, none of these provisions applies to Mr. Murphree's claims. The union defendants first explain that Mr. Murphree's job responsibilities place him within the definition of a "supervisor" under Title VII of the CSRA, and that as a supervisor, 5 U.S.C. § 7106,[2] titled "Management Rights," provides him an adequate remedy if aggrieved by the union defendants' statements. The court finds nothing in § 7106, however, that describes Mr. Murphree's remedy, and the union defendants neither point to any specific text in this statute providing Mr. Murphree a remedy, nor to any case law that so tortuously interprets § 7106.

The union defendants also cite 5 U.S.C. § 7121,[3] explaining that under this provision "the

---

[2] The full text of 5 U.S.C. § 7106 is published below:

 (a) Subject to subsection (b) of this section, nothing in this chapter [5 USCS §§ 7101 et seq.] shall affect the authority of any management official of any agency--

   (1) to determine the mission, budget, organization, number of employees, and internal security practices of the agency; and

   (2) in accordance with applicable laws--

     (A) to hire, assign, direct, layoff, and retain employees in the agency, or to suspend, remove, reduce in grade or pay, or take other disciplinary action against such employees;

     (B) to assign work, to make determinations with respect to contracting out, and to determine the personnel by which agency operations shall be conducted;

     (C) with respect to filling positions, to make selections for appointments from--

       (i) among properly ranked and certified candidates for promotion; or

       (ii) any other appropriate source; and

     (D) to take whatever actions may be necessary to carry out the agency mission during emergencies.

[3]  Subsection (a) of § 7121 is published below:

(a) (1) Except as provided in paragraph (2) of this subsection, any collective bargaining agreement shall provide procedures for the settlement of grievances, including questions of arbitrability. Except as provided in subsections

negotiated grievance procedure between the union and agency is the exclusive procedure for any grievance which arises within the agency." *See* Def. Opp. Br., doc. 8, at 10. The court, after reviewing the text of the statute and the relevant case law, concludes that this provision on negotiated grievance procedures has no bearing on Mr. Murphree's claim for two reasons.

First, the statutory text states that "[e]xcept as provided in subsections (d), (e), and (g) of this section, the [negotiated] procedures [contained in the collective bargaining agreement] shall be the exclusive administrative procedures for resolving grievances *which fall within its coverage.*" 5 U.S.C. § 7121(a)(1) (emphasis added). Thus, § 7121 does not automatically envelop any claim that is remotely connected to union activity. For § 7121 to apply, the grievance must fall within the scope of the collective bargaining agreement's procedures for settling grievances. The union defendants have not supplied this court with any portion of the collective bargaining agreement or its grievance procedures that demonstrates a negotiated grievance procedure through which Mr. Murphree could bring his claim against the union defendants for publishing defamatory materials outside the underlying sexual harassment proceedings. Because the union defendants bear the burden of establishing removal jurisdiction, *see Leonard v. Enter. Rent a Car*, 279 F.3d at 972, their failure to prove *how* a negotiated grievance procedure would address Mr. Murprhee's claim is, by itself, fatal to their preemption argument under § 7121.

Even if the union defendants had provided a negotiated grievance procedure that specifically encompassed Mr. Murphree's claim, the Eleventh Circuit has not interpreted § 7121

---

(d), (e), and (g) of this section, the procedures shall be the exclusive administrative procedures for resolving grievances which fall within its coverage.

    (2) Any collective bargaining agreement may exclude any matter from the application of the grievance procedures which are provided for in the agreement.

to preclude judicial remedies. Relying on the text of § 7121, which provides that negotiated procedures "shall be the *exclusive administrative* procedures for resolving grievances which fall within its coverage," (emphasis added), the Eleventh Circuit held that a 1993 Congressional amendment to the CSRA that added the word "*administrative*" to § 7121(a)(1) "established a federal employee's right to seek a *judicial* remedy for employment grievances subject to the negotiated grievance procedures contained in his or her collective bargaining agreement." *See ASEDAC v. Panama Canal Commn.*, 329 F.3d 1235, 1241 (11th Cir. 2003) (emphasis added).

The court acknowledges that if Mr. Murphree's claim were subject to the negotiated grievance procedure contained in his collective bargaining agreement, the court may then have to consider a separate jurisdictional issue of whether applying § 7121 raises federal question jurisdiction, which would provide the union defendants removal jurisdiction. *Cf. Whitman v. DOT*, 547 U.S. 512, 514 (2006) ("The question . . . is not whether 5 U.S.C. § 7121 confers jurisdiction, but whether § 7121 (or the CSRA as a whole) removes the jurisdiction given to federal courts . . . or otherwise precludes employees from pursuing remedies beyond those set out in the CSRA."). But because the union defendants did not explain to this court *how* Mr. Murphree's claims would come within the coverage of the negotiated procedures, the court need not address this issue. Accordingly, the court concludes that § 7121 does not subject his claim to the CSRA.

Finally, the union defendants, almost as an afterthought, argue that "the CSRA provides that any 'person' . . . may allege that a labor organization has committed an unfair labor practice." Def. Opp. Br., doc. 8, at 11; *see* 5 U.S.C. § 7118 (stating the procedure for alleging unfair labor practices). While true that Mr. Murphree *could* allege an unfair labor practice, and

that all complaints of unfair labor practices are to be filed with the Federal Labor Relations Authority ("FLRA"), *see* 5 U.S.C. § 7118, he would have to allege conduct by the union defendants that falls within the definition of an "unfair labor practice." *See Karahalios v. Nat'l Fed'n of Fed. Employees*, 489 U.S. 527, 532–33 (1989). The CSRA enumerates conduct that would constitute "unfair labor practices" under 5 U.S.C. § 7116(b). The actions listed in subparagraphs (1)–(7) of § 7116(b) do not apply in this case, notwithstanding the union defendants' attempt to imply that Mr. Murphree's claim somehow alleges a "refus[al] to consult in or negotiate in good faith with an agency . . . ." *See* 5 U.S.C. § 7116(b)(5). Thus, for the union defendants' conduct to constitute an unfair labor practice, it must fall within the catchall provision of subparagraph (8), which states that a labor organization engages in an unfair labor practice if it "otherwise fail[s] or refuse[s] to comply with any provision of this chapter." *See* 5 U.S.C. § 7116(b)(8).

The union defendants, once again, make no attempt to connect the conduct underlying Mr. Murphree's claims to the text of the CSRA, as is their burden, and they fail to explain how Mr. Murphree's claim amounts to an allegation that they failed or refused to comply with any provision of Title VII. The court, after reviewing the language of the statute and case law interpreting it, cannot agree with the union defendants that Mr. Murphree alleges a violation of a duty established under the CSRA.

The irrelevance of § 7116 to these facts may best be illustrated with cases interpreting this statute. In *Karahalios*, the plaintiff, a federal employee, alleged that the union defendant violated its duty of fair representation by advocating that a federal agency declare his position vacant so that another employee could be appointed. The union defendant never notified or informed the

plaintiff it was taking that action. The Court cited § 7114(a)(1), which provides that "a labor organization that has been accorded the exclusive right of representing employees in a designated unit 'is responsible for representing the interests of all employees in the unit it represents without discrimination and without regard to labor organization membership.'" *See Karahalios*, 489 U.S. at 531. Relying on the catchall provision of § 7116(b)(8), which states that "it is 'an unfair labor practice for a labor organization . . . to otherwise fail or refuse to comply with any provision of this chapter,'" the Court determined that the plaintiff alleged an unfair labor practice, and that the appropriate adjudicatory body to hear his claim was the FLRA. *See Karahalios*, 489 U.S. at 532–33.

Similarly, the First Circuit in *Montplaisir v. Leighton*, 875 F.2d 1 (1st Cir. 1989) also found that the plaintiffs had alleged an unfair labor practice. In that case, the plaintiffs participated in an illegal strike, and alleged that the law firm counseling their union had encouraged the illegal strike and negligently advised the union. The First Circuit found that the plaintiffs' state malpractice claim was essentially a "fair representation" claim, and thus an allegation of an unfair labor practice under the CSRA. *See Montplaisir*, 875 F.2d at 3.

The nature of Mr. Murphree's allegations here do not fit with the cases finding allegations of unfair labor practices. Mr. Murphree does not allege that the union breached its duty of fair representation, or any other conduct that is prohibited under the CSRA. Rather, his allegations share much more in common with the plaintiff's in *Gutierrez v. Flores*, 543 F.3d 248 (5th Cir. 2008), who alleged state law claims of defamation and intentional infliction of emotional distress. In *Gutierrez*, the plaintiff, a federal employee at an Army Depot, also served as a union official tasked with renting meeting rooms for monthly union meetings.  The plaintiff later

12

admitted to pocketing funds intended for cleaning rental rooms, and cleaning the rooms himself. After his shrewd union fund stewardship practices were outed, the Department of Labor, FBI, and Department of Defense, Criminal Investigations Division investigated. Although the government declined to prosecute the plaintiff after investigating his misconduct, the Army took disciplinary action against him. The union provided the plaintiff with representation in the disciplinary action, and three union officials, upset that the plaintiff somehow had managed to siphon off even more union funds, sent a letter and an e-mail to third parties stating that the plaintiff was guilty of embezzlement and theft. *See Gutierrez*, 543 F.3d at 251. The plaintiff sued the three union officials, alleging state law defamation claims.

In finding that the plaintiff was not alleging unfair labor practice claims under the CSRA, the Fifth Circuit explained that the plaintiff was not alleging that the defendants had violated a duty established under the CSRA, as the plaintiffs in *Karahalios* and *Montplaisir* had done, but was instead alleging that the defendants' letter and e-mail were "defamatory and intended to inflict emotional distress." *See Gutierrez*, 543 F.3d at 255. The Fifth Circuit determined that "[n]othing in the CSRA pertains to this specific scenario," concluding that "because [the plaintiff] does not allege an 'unfair labor practice,' *Karahalios* does not govern this case." *Gutierrez*, 543 F.3d at 255. The court finds this reasoning persuasive, even though it notes that the defendants in *Gutierrez* were individuals, and not unions as in this case. Regardless of whether the defendants are individuals or union entities, the court is at a loss to conclude how the publication of the UNITY article detailing the sexual harassment proceedings against Mr. Murphree constitutes an unfair *labor* practice. The union defendants have not persuaded the court to find otherwise.

13

The court, therefore, determines that Title VII of the CSRA offers Mr. Murphree no remedy for his alleged claims, and, thus, concludes that Title VII does not provide a basis for preemption. *See also Anderson v. Nat'l Treas. Employee Union*, 2000 U.S. Dist. LEXIS 8765, at *17 (M.D.N.C. Feb. 2, 2000) (finding that an employee's alleged state law defamation claims were not preempted by the CSRA because the allegations did not indicate "that [the plaintiff's] state law claims have anything to do with labor/management relations").

2.     *Does the conduct forming the basis of Mr. Murphree's state law claims constitute a "prohibited personnel practice"?*

The union defendants also allege that the CSRA "prohibits Murphree from taking any prohibited personnel action - including instituting state claims in tort - based on an employee's protected activity reporting or disclosing his conduct, or based on representation of the employee by her union." Def. Opp. Br., doc. 8, at 11. From the outset, the court notes that the union defendants misstate the analysis for finding claims preempted under the CSRA. The question is not whether *Mr. Murphree* took prohibited personnel action, but whether Mr. Murphree sues the *union defendants* for taking adverse personnel action that would be subject to the CSRA. In other words, the court must determine if the union defendants' conduct underlying Mr. Murphree's state law defamation claims constitutes "prohibited personnel practice," such that the CSRA would provide *Mr. Murphree* a remedy, rather than question whether Mr. Murphree engaged in "prohibited personnel practices" by asserting his claim against the union defendants.

The CSRA defines the phrase "prohibited personnel practice" in 5 U.S.C. § 2302(b). This definition includes, for example, discriminating against any employee based on race, or taking personnel action against an employee because the employee filed a grievance. Integral to the

14

definition of "prohibited personnel practice," however, is that the prohibited conduct must be performed by a federal employee who has the authority "to take, direct others to take, or approve personnel action." *See* 5 U.S.C. § 2302(b). The CSRA defines personnel action, with respect to an employee in a covered position in an agency, as an appointment; a promotion; a disciplinary or corrective action; a detail, transfer or reassignment; a reinstatement; a restoration; a reemployment; a performance appraisal; a decision concerning pay, benefits, or awards, or concerning education or training if the education or training may reasonably be expected to lead to an appointment, promotion, or performance evaluation; a decision to order psychiatric testing or examination; and any other significant change in duties, responsibilities, or working conditions. 5 U.S.C. § 2302(a)(2)(A)(i)–(xi).

Because a defendant's conduct is a prohibited personnel practice only if the defendant could take personnel action, the court must specifically determine whether the union defendants' publication of the female employee's allegations in the UNITY newsletter constitutes personnel action. What constitutes personnel action is an issue that courts have grappled with, particularly in cases where the defendant is not the plaintiff's supervisor or takes action not typically considered traditional personnel action. Some courts broadly construe the term "personnel action," stretching the limits of the term to find that a defendant engaged in personnel action, thus subjecting the plaintiff's suit to the CSRA. *See, e.g., Schwartz v. IFPTE*, 306 Fed. Appx 168, 173 (5th Cir. 2009); *Saul v. United States*, 928 F.2d 829, 834 (9th Cir. 1991); *Carducci v. Regan*, 714 F.2d 171, 174 n. 3 (D.C. Cir. 1983); *Greene v. AFGE, AFL-CIO, Local 2607*, 2005 U.S. Dist. LEXIS 19983 (D.D.C. Sep. 7, 2005). Other courts have found limits to the term, and declined to find that a defendant engaged in personnel action notwithstanding some link to the

plaintiff's federal employment. *See*, *e.g.*, *Gilding v. Carr*, 608 F. Supp. 2d 1147, 1151–52 (D. Ariz. 2009) (providing a summary of cases where a federal defendant's conduct was not found to constitute "personnel action" against a federal employee).

Even under a broad interpretation, however, the defendants here have not attempted to argue how *their* conduct constitutes personnel action under the CSRA, but instead focus only on drawing factual, rather than legal, similarities to other cases. After reviewing these cases, the court concludes that the union defendants have not met their burden of demonstrating how Mr. Murphree's well-pled complaint alleges that they took personnel action with respect to Mr. Murphree to bring his complaint within the scope of the CSRA.

Courts finding personnel action

Many courts that the union defendants have relied on interpreted "personnel actions" quite broadly when deciding the preemption issue.[4] For example, the Fifth Circuit stated, in an unpublished decision, that "courts broadly construe the definition of 'personnel action'" and that "courts have found violations of § 2301(b)(2) even when none of the specific grounds for unfairness listed therein were implicated." *See Schwartz v. IFPTE*, 306 Fed. Appx. at 173. In that case the plaintiff, a senior administrative law judge, stepped down from his position, alleging that two union representatives forced him to step down through persistent antagonism. Specifically, the plaintiff alleged the representatives had accused him of engaging in misconduct, had filed grievances when he denied their requests to investigate him, and had circulated emails to other

---

[4] The court examines primarily case law from other circuits because the Eleventh Circuit has not discussed, in depth, what constitutes "personnel action" under § 2302 of the CSRA. *See Broughton v. Courtney*, 861 F.2d 639, 644 (11th Cir. 1998) (finding, summarily, that the defendants' recommendation of another employee for a job for which the plaintiff applied and separate disciplinary actions constituted personnel action).

ALJs accusing him of impairing office relations and engaging in retaliatory acts. The plaintiff also alleged that the representatives conspired to deprive him of his senior status, resulting in his relegation to inferior office space. *See Schwartz*, 306 Fed. Appx. at 170. The Fifth Circuit explained, as an example of how the plaintiff had alleged personnel action, that the plaintiff's relegation to inferior office space constituted a change in "working conditions." Thus, the Court held that the union representatives' alleged conduct resulting in that change constituted personnel action under 5 U.S.C. § 2302(a)(2)(A)(ix). *Schwartz*, 306 Fed. Appx. at 173.

Other courts have also interpreted "personnel action" broadly. *See Saul v. United States*, 928 F.2d at 834 (citing to the CSRA's legislative history to support its holding that "personnel action" should be broadly construed); *Carducci*, 714 F.2d at 174 n. 3 ("The types of personnel action which can constitute grounds for a prohibited personnel practice are extremely broad, if not exhaustive.") (emphasis omitted). The Ninth Circuit in *Saul*, noting that "corrective action" was included among the list of "personnel action[s]," relied on a broad construction to find that "corrective action" could be read to encompass a supervisor's opening a supervisee's mail. *See Saul*, 928 F.2d at 834.

Similarly, the First Circuit in *Roth v. United States*, 952 F.2d 611 (1st Cir. 1991), explained that personnel actions include "corrective action[s]," which, according to that court, is a "capacious [category], encompassing a wide variety of conduct affecting federal employees." *Roth*, 952 F.2d at 614. In that case, two federal employees disagreed over the procedure for terminating another employee, with one complaining openly and loudly about the other. The employee being complained about sued the United States, seeking monetary and injunctive relief because of the statements made. The First Circuit found that the complaints were job related as

17

they reflected dissatisfaction with the plaintiff's work. Thus, the First Circuit concluded that the plaintiff had "alleged a prohibited personnel practice, that is, a personnel action violative of the merit principles." *Roth*, 952 F.2d at 614.

In addition to these appellate cases, the union defendants rely on a district court case, *Greene v. AFGE, AFL-CIO, Local 2607*, 2005 U.S. Dist. LEXIS 19983 (D.D.C. Sep. 7, 2005), which they emphasize because they claim it is "exactly on point." In that case, the plaintiff's supervisee filed a grievance against the plaintiff alleging sexual harassment. In the grievance proceedings, the supervisee was represented by an employee of the union defendant. The plaintiff alleged that *during the proceedings*, the supervisee and her representative committed defamation and false light invasion of privacy by making at least one false statement concerning the plaintiff's sexual behavior. *See Greene*, 2005 U.S. Dist. LEXIS 19983 at *1–*2. When the plaintiff brought suit alleging these tort claims, he named the union as a defendant under the theory of *respondeat superior*. *See Greene*, 2005 U.S. Dist. LEXIS 19983 at *2. The district court summarily found the plaintiff's allegations to encompass conduct that was "prohibited personnel practice," explaining that "[b]ecause the plaintiff's allegations concern a grievance that a coworker filed against him, as well as another federal employee's conduct resulting from that grievance, the court determines that his claims fall within the scope of the [CSRA]'s provisions regarding personnel actions." *Greene*, 2005 U.S. Dist. LEXIS 19983 at *10.

The court disagrees with the union defendants that *Greene*, a non-binding district court case, is "exactly on point." The court acknowledges the superficial similarity of this case and *Greene*; both involved a plaintiff who had been accused of sexual harassment, and both allege state law defamation claims arising out of the proceedings. The key distinction, however, is the

context. In *Greene*, the plaintiff alleged that his supervisee and her representative made defamatory statements *in the course of the grievance proceedings*. The plaintiff in *Greene* sought to attribute these defamatory statements to the union through *respondeat superior*. *See Greene*, 2005 U.S. Dist. LEXIS 19983, at *2. Here, however, the union defendants made the allegedly defamatory statements *outside* the grievance proceedings. In *Greene*, those who participated in the proceeding certainly had the ability to bring about personnel action as to the plaintiff. But the union defendants here have made no showing that their publication of the UNITY article outside the grievance proceedings could fit into any of the categories of "personnel action" listed in § 2302(a).

Courts finding no personnel action

Even though some courts have explained that "personnel action" is to be broadly construed, other courts have found a limit to what constitutes "personnel action" and have declined to find that the CSRA covers conduct under certain situations. As an extreme example, the Ninth Circuit in *Brock v. United States*, 64 F.3d 1421 (9th Cir. 1995) held that alleged rape and physical abuse by the plaintiffs' supervisor did not constitute "personnel actions" within the meaning of the CSRA. *See Brock*, 64 F.3d at 1425; *see also Gilding*, 608 F. Supp. 2d at 1151–52 (providing a summary of cases where a federal defendant's conduct was not found to constitute "personnel action" against a federal employee).

Less egregious conduct has also been found to fall outside the definition of "personnel action." The Fifth Circuit in *Gutierrez v. Flores*, 543 F.3d 248 (5th Cir. 2008) cited above, provides one such example. The plaintiff in that case, a union official who had disciplinary proceedings brought against him for pocketing union funds, alleged state law defamation claims

19

against the defendants stemming from written communications that they sent to federal officials. The defendants in that case argued that Title II of CSRA preempted the plaintiff's state law defamation claims, and cited many of the same cases as the union defendants in this case.

The Fifth Circuit, however, rejected the defendants' arguments, explaining that their "reliance on personnel action cases is misplaced." *Gutierrez*, 543 F.3d at 253. The Fifth Circuit explained that the facts of that case did not "involve the employment relationship or any adverse employment action," unlike other CSRA cases cited by the defendants in *Gutierrez*, which did involve government employers or supervisors taking actions against government employees that allegedly violated the merit principles outlined in Title II of the CSRA. *Gutierrez*, 543 F.3d at 954. The Fifth Circuit concluded that the complete preemption mentioned in those cases did not dictate its holding. *Gutierrez*, 543 F.3d at 253–54.

The court finds the Fifth Circuit's analysis in *Gutierrez* persuasive, and similarly concludes that because Mr. Murphree's state law claims do not involve his employment relationship or any adverse employment action, the cases finding complete preemption under the CSRA do not dictate this court's holding.

In discussing *Gutierrez*, the union defendants do not address the legal principle the Fifth Circuit elucidated in *Gutierrez*—that a defendant must take personnel action for the plaintiff's claims to fall within the scope of the CSRA—but instead focus on factual distinctions. For example, they argue that the facts of *Gutierrez* involved only intra-union affairs, while the publication of the sexual harassment allegations against Mr. Murphree involves conduct related to Mr. Murphree's federal employment. The Fifth Circuit in *Gutierrez*, however, noted that the defendants' allegedly defamatory communications implicated conduct that would have been

20

subject to the CSRA. The Fifth Circuit nevertheless explicitly drew a distinction between the

Army's suspension of the plaintiff and the defamatory writings. *See Gutierrez*, 543 F.3d at 254 n.

8 ("We note that the Army suspended [the plaintiff]. . . as a result of the . . . investigation. That

adverse employment action is not in dispute, however, and this case solely concerns the

defamatory letter and e-mail between members of the union."). This rationale also applies to this

case. Mr. Murphree does not dispute the underlying sexual harassment allegations and the

proceedings flowing from it; instead, this case solely concerns the defamatory article published in

the union newsletter separate from those proceedings.

Mr. Murprhee cites another district court case, *Gilding v. Carr*, 608 F. Supp. 2d 1147 (D.

Ariz. 2009), where the district court found the defendants' alleged conduct to fall outside the

scope of "personnel action" as defined in the CSRA, and which this court also finds persuasive.

In *Gilding*, a former FAA employee published defamatory material on his blog about the

plaintiff, an FAA employee. The former employee had obtained the plaintiff's confidential files

from other FAA employees who were also officers of the plaintiff's union. The plaintiff sued the

former employee, current employees, and the union, asserting state law claims. The district court,

after considering the purpose of the CSRA and many of the cases the defendants cited, held that

the alleged conduct did not constitute personnel actions. That court acknowledged that other

cases had held that government officials could have "authority to recommend personnel action"

under the CSRA, even if they were not the plaintiff's direct supervisor. *See Gilding*, 608 F. Supp.

2d at 1153. The district court nevertheless explained that because "[the defendants] make no

showing that they are such officials nor . . . claim that their defamation of [the plaintiff] occurred

while, during the course of their employment, they communicated their views about [the

plaintiff] to someone within the FAA who had authority to remove him," the defendants were not engaged in personnel action. *Gilding*, 608 F. Supp. 2d at 1153.

The union defendants also attempt to distinguish *Gilding* by focusing on factual distinctions and ignoring the legal principles that form the basis for the *Gilding* court's holding. Although the court agrees that factual distinctions exist, *e.g.*, the allegedly defamatory material was published on a former employee's blog rather than the union newsletter, the underlying legal principle—which the union defendants cite—is equally applicable to this case. The union defendants explain that "[t]he court [in *Gilding*] declined to apply CSRA preemption because the defendants were not 'in a position to take, direct others to take, recommend, or approve any personnel action as to' the plaintiff." Def. Opp. Br., doc. 8 at 15. Rather than explain how *they* were in a position to take personnel action as to Mr. Murphree, the union defendants instead quote the district court from *Greene* and state that "the relevant inquiry is whether the claim implicates an action that 'falls within the purview of' the CSRA." Def. Opp. Br., doc. 8 at 15 (quoting *Greene*, 2005 U.S. Dist. LEXIS 19983 at *9).

The union defendants, however, quote *Greene* out of context and misunderstand the "relevant inquiry." *See Greene*, 2005 U.S. Dist. LEXIS 19983 at *9 ("The CSRA preempts a state tort claim if *the claim* falls within the purview of the Act.") (emphasis added). The relevant inquiry is not whether Mr. Murphree's claim implicates, or is remotely connected to, a personnel action, but instead whether the claim he asserts against the union defendants alleges a prohibited personnel practice by the union defendants. As the Fifth Circuit in *Gutierrez* demonstrated, a plaintiff may allege conduct that does not fall within the purview of the CSRA, even though the underlying conduct may "implicate" personnel action.  *See Gutierrez*, 543 F.3d at 254 n. 8.

22

The court finds that this case squares better with *Gutierrez* and *Gilding* than it does with *Schwartz* and *Greene*, the cases most heavily relied upon by the union defendants. The union defendants here do not make any arguments as to what "personnel action" they took against the plaintiff that would be subject to the CSRA and that forms the basis of the plaintiff's complaint, nor can the court discern any conduct falling within the definition of "personnel action" from its review of the complaint and the parties' briefs. This court, under any reasonable construction of the list of potential personnel actions in § 2302(a), cannot find how the union defendants' publication of the story falls within its scope.

Accordingly, because the union defendants have not shown how Mr. Murphree's complaint alleges that they took personnel action, as is their burden in arguing for jurisdiction, this court concludes that Mr. Murphree's state law defamation claims do not allege conduct that constitutes a prohibited personnel practice under the CSRA. The court, thus, finds that his state law claims are not preempted under Title II of the CSRA.

## CONCLUSION

In remanding this case to state court, the court makes no statement on the merits of the case. It only concludes that the union defendants have not provided any evidence or otherwise persuaded this court that Mr. Murphree has alleged that they took personnel action regarding the plaintiff in publishing the newsletter or that any aspect of Mr. Murphree's claim involves labor/management relations. Accordingly, the court finds that Mr. Murphree's complaint does not fall within the scope of the CSRA and is not preempted. Without any other basis for subject matter jurisdiction, the court hereby GRANTS the plaintiff's motion and REMANDS this case to state court for further proceedings. The court will simultaneously enter an order to that effect.

DONE and ORDERED this 27th day of March, 2012.

KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE